IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CANADIAN BREAKS, LLC, | § | |
| | § | |
| Plaintiff and Counter-Defendant, | § | |
| | § | |
| v. | § | 2:21-CV-37-M-BR |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant and Counter-Plaintiff. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO DENY JPMORGAN CHASE BANK, N.A.'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is Defendant and Counter-Plaintiff JPMorgan Chase Bank, N.A.'s ("JPMorgan") Rule 12(c) Motion for Judgment on the Pleadings. (ECF 47). By that motion, JPMorgan moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure with respect to Plaintiff and Counter-Defendant Canadian Breaks, LLC's ("Canadian Breaks") claim for declaratory judgment, JPMorgan's counterclaim for declaratory judgment, and liability as to JPMorgan's counterclaim for breach of contract. (*Id.* at 1). Having considered the motion, the undersigned United States Magistrate Judge recommends JPMorgan's Rule 12(c) Motion for Judgment on the Pleadings be DENIED.

I. **BACKGROUND**[1]

Canadian Breaks owns and operates a windfarm in Deaf Smith and Oldham Counties in the Texas panhandle. (ECF 1-1 at 5). Canadian Breaks and JPMorgan entered into a "hedge" contract, in which Canadian Breaks was to sell daily fixed quantities of electricity to JPMorgan at

---

[1] As required for a Rule 12(c) motion, the factual allegations addressed herein are the well-pleaded facts contained in Canadian Breaks's Original Petition, Canadian Breaks's admissions in its Answer to JPMorgan's Counterclaims, and the documents attached to the parties' pleadings. *See Flinn v. Michael J. Scott, P.C.*, No. 3:14-CV-0701-N, 2014 WL 11460395, at *1 (N.D. Tex. Dec. 2, 2014); *Lusk v. Kroger & Kroger Texas, L.P.*, No. 3:09-CV-0521-O, 2010 WL 26445, at *1 (N.D. Tex. Jan. 6, 2010).

a fixed price from January 1, 2020 through December 31, 2031. (*Id.*). The hedge agreement consists of a series of documents governed by a standard agreement known as an International Swaps and Derivatives Association Master Agreement, dated June 15, 2018 (collectively referred to as the parties' "Agreement"). (*Id.* at 8). The Agreement contains a "Force Majeure" provision. (*Id.* at 10–11; *see* ECF 12-1 at 31). The Agreement is governed by New York law. (ECF 12-1 at 52).

In early February 2021, the windfarm experienced extreme cold weather during a polar vortex[2] that caused energy infrastructure issues throughout Texas. (ECF 1-1 at 11). Canadian Breaks claims that its "wind turbines [were] rendered inoperable for prolonged periods due to icing and associated mechanical issues," including "with the wind turbine generators' lubrication viscosity and internal mechanics." (*Id.* at 6, 11). Canadian Breaks alleges that this caused "the Windfarm to involuntarily stop or limit its generation of electricity for several days," because "[n]one of these problems could be resolved under the extreme cold conditions." (*Id.* at 11). Additionally, "[t]he wind also failed to blow anywhere near its historic trends[.]" (*Id.* at 6). The State of Texas and its regulators issued various emergency orders related to the insufficient energy supply and significant dysfunction caused by Winter Storm Uri. (*Id.* at 11). Governor Greg Abbott issued a Declaration of a State of Disaster for all counties in Texas on February 12, 2021. (*Id.* at 6).

On February 14, 2021, Canadian Breaks notified JPMorgan that a force majeure event under the Agreement had occurred and was continuing to occur. (*Id.* at 12; *see* ECF 12-2 at 2–3).

---

[2] The parties use various phrases in their pleadings and the instant motion, response, and reply to refer to this weather event, including "polar vortex," "winter weather event," and "Winter Storm Uri." For consistency and readability, the Court will refer to the event(s) as Winter Storm Uri in this Findings, Conclusions, and Recommendation.

On February 15, 2021, JPMorgan responded by rejecting Canadian Breaks's claim of an occurrence of a force majeure event. (ECF 1-1 at 12; *see* ECF 12-3 at 2–4). Although Canadian Breaks delivered some energy between February 9, 2021 at 3:00 a.m. and February 19, 2021 at 10:59 a.m., Canadian Breaks did not resume full performance until after that period. (ECF 1-1 at 12; *see* ECF 12-4 at 2–5). JPMorgan invoiced Canadian Breaks for the replacement price of the electricity that JPMorgan bought on the open Energy Reliability Council of Texas ("ERCOT") market; those demands totaled $71,863,420.87 as of the date Canadian Breaks filed its Original Petition. (ECF 1-1 at 12–13; *see* ECF 12-5 at 2–13).

Canadian Breaks filed its Original Petition on March 1, 2021 in state court, and JPMorgan filed a Notice of Removal in this Court on March 9, 2021. (ECF 1-1 at 5–15; ECF 1). JPMorgan filed an Answer with Affirmative Defenses and Counterclaims on March 23, 2021. (ECF 12). Canadian Breaks filed an Answer to JPMorgan's Counterclaims on April 13, 2021. (ECF 21). JPMorgan filed the instant Rule 12(c) Motion for Judgment on the Pleadings on October 4, 2021. (ECF 47).

## II.   LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). As the Fifth Circuit has explained, a Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotation marks and citations omitted). "A motion to dismiss under Rule 12(c) is disfavored and rarely granted." *Boyd v. Dallas Indep. Sch. Dist.*, No. 3:08-CV-0426-M(BF), 2009 WL 159243, at *1 (N.D.

Tex. Jan. 21, 2009) (citing *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)).

"The standard for a Rule 12(c) motion is the same as the standard used for Rule 12(b)(6) motions." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022). "The court accepts the 'well-pleaded facts as true,' and views 'them in the light most favorable to the plaintiff.'" *Id.* (quoting *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007)). "Finally, a court must determine whether the complaint includes 'enough facts to state a claim to relief that is plausible on its face.'" *Dallas Roof Gardens, Inc. v. City of Dallas Tex.*, No. 3:07-CV-696-O, 2009 WL 3378659, at *2 (N.D. Tex. Oct. 21, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court does not evaluate the plaintiff[']s likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim." *Id.* (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

"Additionally, courts cannot look beyond the pleadings." *Lusk v. Kroger & Kroger Texas, L.P.*, No. 3:09-CV-0521-O, 2010 WL 26445, at *1 (N.D. Tex. Jan. 6, 2010) (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999)). "The pleadings include the complaint and any documents attached to it." *Id.* (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). "Likewise, documents that a defendant attaches to its motion are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims." *Id.* (citing *Collins*, 224 F.3d at 498–99); *see Flinn v. Michael J. Scott, P.C.*, No. 3:14-CV-0701-N, 2014 WL 11460395, at *1 (N.D. Tex. Dec. 2, 2014) (noting that courts may consider documents attached to the movant's pleadings when evaluating a Rule 12(c) motion).

## III.  ANALYSIS

JPMorgan moves for judgment on the pleadings with respect to: (1) Canadian Breaks's claim for declaratory judgment (Count I of Canadian Breaks's Original Petition); (2) JPMorgan's counterclaim for declaratory judgment (Count II of JPMorgan's Counterclaims); and (3) JPMorgan's counterclaim for breach of contract (Count I of JPMorgan's Counterclaims). (ECF 47 at 1–2; *see* ECF 1-1 at 13–14; ECF 12 at 37–39). JPMorgan requests: (1) "[a] judgment for JPMorgan with respect to the parties' respective declaratory judgment claims . . . declaring that Canadian Breaks' nonperformance during the period between February 9, 2021 and February 19, 2021 was not excused by force majeure"; and (2) "[a] judgment for JPMorgan as to liability on its counterclaim for breach of contract[.]" (ECF 47 at 2).

### A. Canadian Breaks's Claim for Declaratory Judgment and JPMorgan's Counterclaim for Declaratory Judgment

Canadian Breaks's Original Petition seeks a declaratory judgment "that the Force Majeure clause in the . . . Agreement relieved [Canadian Breaks] of its contractual obligations to JP Morgan from February 9 at 3:00 a.m. to February 19, 2021 at 10:59 a.m. Central Time[.]" (ECF 1-1 at 14). JPMorgan states in its Answer with Affirmative Defenses and Counterclaims that it "seeks a declaration that Canadian Breaks' non-performance . . . was not excused by force majeure." (ECF 12 at 39). As JPMorgan explains, its counterclaim for declaratory judgment is a "mirror-image claim" to Canadian Breaks's claim for declaratory judgment. (ECF 48 at 6).

"When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Ondova Ltd. Co. v. Manila Indus., Inc.*, 513 F. Supp. 2d 762, 775–76 n.12 (N.D. Tex. 2007) (citations omitted). Therefore, both Canadian Breaks and JPMorgan's declaratory judgment claims are effectively claims under the Declaratory Judgment Act.

"The Declaratory Judgment Act provides that, in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293–94 (5th Cir. 2019) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); 28 U.S.C § 2201(a)) (internal quotation marks and alterations omitted). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Id.* (quoting *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). "The court must ask (1) 'whether an "actual controversy" exists between the parties' in the case; (2) whether it has authority to grant declaratory relief; and (3) whether 'to exercise its broad discretion to decide or dismiss a declaratory judgment action.'" *Id.* (quoting *Orix Credit All.*, 212 F.3d at 895). "The statute's requirement of a 'case of actual controversy' refers to an Article III case or controversy." *Id.* (citing *MedImmune*, 549 U.S. at 126). The movant "bears the burden of pleading facts demonstrating the existence of a justiciable controversy." *Id.* (citing *Orix Credit All.*, 212 F.3d at 897).

"A force majeure event is an event beyond the control of the parties which prevents performance under a contract and may excuse non-performance." *Aukema v. Chesapeake Appalachia, LLC*, 904 F. Supp. 2d 199, 204–05 (N.D.N.Y. 2012) (citing *Kel Kim Corp. v. Cent. Mkts., Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987)).[3] Here, the Agreement states:

> "Force Majeure" means an event or circumstance which prevents the Claiming Party from performing its obligations under one or more Power Transactions, which event or circumstance was not anticipated as of the date the Power Transaction was agreed to, which is not within the reasonable control of, or the result of the negligence of, the Claiming Party, and which, by the exercise of due diligence, the Claiming Party is unable to overcome or avoid or cause to be avoided. Force Majeure shall not be based on (i) the loss of Buyer's markets; (ii) Buyer's inability

---

[3] The parties do not dispute that the Agreement is governed by New York law. (*See* ECF 12-1 at 52; ECF 48 at 6; ECF 53 at 2, 6–8, 16–30).

> economically to use or resell the Product purchased hereunder; (iii) the loss or failure of Seller's supply; or (iv) Seller's ability to sell the Product at a price greater than the Contract Price. Neither party may raise a claim of Force Majeure based in whole or in part on curtailment by the Transmission Provider unless (i) such party has contracted for firm transmission with a Transmission Provider for the Product to be delivered to or received at the Delivery Point and (ii) such curtailment is due to "force majeure" or "uncontrollable force" or a similar term as defined under the Transmission Provider's tariff; provided, however, that existence of the foregoing factors shall not be sufficient to conclusively or presumptively prove the existence of a Force Majeure absent a showing of other facts and circumstances which in the aggregate with such factors establish that a Force Majeure as defined in the first sentence hereof has occurred. The applicability of Force Majeure to the Power Transaction is governed by the terms of the Products and the Related Definitions contained in Schedule P.

(ECF 12-1 at 31; *see* ECF 1-1 at 10).

After reviewing the parties' pleadings and the attachments to those pleadings, viewed in the light most favorable to Canadian Breaks, the Court finds that there are material facts in dispute. *See Terry Black's Barbecue, L.L.C.*, 22 F.4th at 454. Thus, the Court cannot "look[] to the substance of the pleadings and any judicially noticed facts" to conclude whether Winter Storm Uri constitutes a force majeure event under the Agreement. (*See* ECF 12-1 at 31); *Great Plains Trust Co.*, 313 F.3d at 312. In such an instance, a "disfavored and rarely granted motion" such as a Rule 12(c) motion shall not be granted. *See Boyd*, 2009 WL 159243, at *1; *Sosa*, 646 F.2d at 993.

JPMorgan asserts that it is entitled to judgment on the pleadings, because "[t]his entire case boils down to a single issue: whether [Winter Storm Uri] . . . qualified as a force majeure event under the parties' agreement," and "[e]ven taking all of Canadian Breaks' allegations as true, the plain language of the agreement makes clear that it did not." (ECF 48 at 6). JPMorgan contends that Canadian Breaks has "presented only two grounds for its force majeure declaration," neither of which are a legally cognizable basis for force majeure under New York law. (*Id.* at 16–20). JPMorgan summarizes Canadian Breaks's two grounds as: "(1) high energy prices caused by

purported 'market dysfunction' within ERCOT and (2) its professed inability to generate energy at its Wind Farm during certain portions of Winter Storm Uri." (*Id.* at 16).

Canadian Breaks, however, disagrees with this two-part categorization of its force majeure declaration. Instead, Canadian Breaks asserts that "the Court can and should consider the totality of circumstances that prevented the Windfarm from fully performing during Winter Storm Uri[.]" (ECF 53 at 23). Canadian Breaks asserts that its force majeure claim is based on numerous circumstances, one of which was the "crippling" effect Winter Storm Uri had on "the State's energy infrastructure on multiple levels." (ECF 1-1 at 6).

More specifically, Canadian Breaks alleges the Texas energy market faced "unprecedented shortages of energy," that "required regulators to impose rolling blackouts to manage supply." (*Id.* at 6, 11). JPMorgan "admits that Texas' energy market faced decreased supply and increased demand during . . . Winter Storm [Uri]," but "lacks knowledge or information sufficient to admit or deny" the remaining allegations. (ECF 12 at 4, 15). Canadian Breaks further alleges that in order to limit energy demand, ERCOT "raised prices to $9,000 per MWh to stimulate supply, which failed to achieve its intended purpose." (ECF 1-1 at 11). Power generation facilities experienced "unprecedented operational constraints" and "the market had insufficient supply and significant dysfunction." (*Id.*). "JPMorgan admits that ERCOT set prices as high as $9,000/MWh," and "that Texas' energy market faced decreased supply and increased demand during . . . Winter Storm [Uri]," but "lacks knowledge or information sufficient to admit or deny" the remaining allegations. (ECF 12 at 15–16).

Although JPMorgan argues that Canadian Breaks cannot rely solely on the undisputedly high energy prices of up to $9,000/MWh because economic hardship cannot form the basis of force majeure under New York law, Canadian Breaks has also alleged that it could not perform

due more generally to the energy market's "insufficient supply and significant dysfunction." (*See* ECF 1-1 at 11–12; ECF 12 at 15; ECF 48 at 16–17; ECF 53 at 20–23). Canadian Breaks admitted in its Answer to Defendant's Counterclaims "that, in a properly and normally performing market situation, and if the electricity generation from the Windfarm is insufficient to meet the quantities specified by the parties' agreement, that [Canadian Breaks] could acquire the necessary quantity by scheduling a purchase through ERCOT." (ECF 21 at 8). However, Canadian Breaks "denie[d] that the market was properly or normally working during the Force Majeure period or that [Canadian Breaks] was able to reasonably access the open market during such time." (*Id.*).

Canadian Breaks alleges that due to "serious supply issues and general market dysfunction, the Windfarm could not find enough power elsewhere in the ERCOT market to meet the Windfarm's energy delivery obligations" under the contract. (ECF 1-1 at 11–12). JPMorgan denies this allegation. (ECF 12 at 16). Rather, JPMorgan alleges as part of its Counterclaims that "[s]cheduling transactions with ERCOT was not impossible during the Non-Performance Period, as evidenced by the fact that JPMorgan scheduled transactions with ERCOT." (ECF 12 at 38). Canadian Breaks denies that allegation. (ECF 21 at 11).

For the purposes of the instant motion, the Court must accept Canadian Breaks's well-pleaded facts as true and view them in the light most favorable to Canadian Breaks. *See Terry Black's Barbecue, L.L.C.*, 22 F.4th at 454. Based on its review of the parties' pleadings and the attachments to those pleadings, the Court finds that, at a minimum, an issue of fact exists as to whether, given all of the circumstances surrounding the ERCOT market during Winter Storm Uri, Canadian Breaks was able to purchase the energy it needed to meet its contractual obligations to JPMorgan. This factual dispute is material, and any material factual dispute precludes the Court from rendering a judgment on the pleadings. *See Great Plains Trust Co.*, 313 F.3d at 312.

Accordingly, the Court needs not specifically address any other potential issues of material fact and makes no legal conclusions as to the merits of either party's claims.

For the abovementioned reasons, JPMorgan's Rule 12(c) Motion for Judgment on the Pleadings should be denied as to Canadian Breaks's claim for declaratory judgment and JPMorgan's counterclaim for declaratory judgment.

### B. JPMorgan's Counterclaim for Breach of Contract

Finally, JPMorgan seeks judgment on the pleadings with respect to its breach of contract counterclaim. (*See* ECF 47 at 1; ECF 12 at 37–39). "Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Balk v. N.Y. Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017)).

JPMorgan states that "[i]f this Court rejects Canadian Breaks' force majeure theory, it should find that Canadian Breaks is liable for breach of contract, and JPMorgan's damages can be determined at a later stage of this action." (ECF 60 at 15). However, as explained above, the Court finds that there is an issue of material fact concerning Canadian Breaks's force majeure theory and, as such, has not rejected that theory. Accordingly, the Court cannot determine whether Canadian Breaks breached the contract, such as to entitle JPMorgan to judgment on the pleadings. *See generally PT Kaltim Prima Coal v. AES Barbers Point, Inc.*, 180 F. Supp. 2d 475, 482 (S.D.N.Y. 2001) ("A declaration of force majeure relieves both seller and buyer of their contractual obligations.").

Therefore, JPMorgan's Rule 12(c) Motion for Judgment on the Pleadings should be denied as to JPMorgan's counterclaim for breach of contract.

## IV.     RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge RECOMMENDS to the Chief United States District Judge that JPMorgan's Rule 12(c) Motion for Judgment on the Pleadings (ECF 47) be DENIED.

## V.     INSTRUCTION FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 28, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).