IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CANADIAN BREAKS LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:21-cv-00037-M |
| JPMORGAN CHASE BANK NA, | § § § | |
| Defendant. | § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Findings, Conclusions, and Recommendations of the United States Magistrate Judge (ECF No. 123) ("FCR"), in which Magistrate Judge Ray recommends this Court grant the Motion for Summary Judgment (ECF No. 106) filed by Defendant JPMorgan Chase Bank, N.A., and enter summary judgment in Defendant's favor on all claims. Also before the Court are Plaintiff Canadian Breaks LLC's Objections to the FCR (ECF No. 128). On December 20, 2023, the Court heard argument on the Objections.

Having reviewed the findings of fact, conclusions of law, and recommendations in the Magistrate Judge's FCR, as well as Canadian Breaks's objections, and all other relevant documents in the record, and having made a *de novo* disposition of the portions of the FCR to which objections were specifically directed, the Court **OVERRULES IN PART** and **SUSTAINS IN PART** Canadian Breaks's objections. JPMorgan's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

1

I.    **Background**

This dispute arises out of a June 15, 2018, International Swaps and Derivatives Association Master Agreement ("Agreement") between Plaintiff Canadian Breaks LLC ("Canadian Breaks" or "CB") and Defendant JPMorgan Chase Bank, N.A. ("JPMorgan" or "JPM"), in which JPMorgan agreed to purchase from Canadian Breaks an hourly fixed quantity of electricity for a fixed price of $19.55 per megawatt hour ("MWh"), fairly characterized as follows:

> Under the Agreement, although CB produced energy at its wind farm, it did not sell that energy directly to JPM. Instead, the Agreement set up a two-part transaction. First, CB generated wind energy and sold it to [Electricity Reliability Council of Texas ("ERCOT")] at the market price. Second, CB purchased from the market (at market price) the fixed quantity of energy that it agreed to deliver to JPM and sold that energy to JPM for $19.55 per MWh, the fixed price in the Agreement. Two-part transactions of this kind are normal in deregulated energy markets like that in Texas. Energy generators like CB's wind farm sell and pool energy into the Texas electrical grid, and purchasers may buy energy from the grid. Without hedge agreements like the one at issue, producers and purchasers would have to buy and sell energy at the market price. Two-part transactions like the one in the Agreement allow producers like CB to hedge against low market prices and purchasers like JPM to hedge against high market prices.

FCR at 2 (citations omitted).

From February 9 to 19, 2021, Winter Storm Uri caused power generation outages and a severe loss of electricity service to Texas customers; in response to the resulting increased demand for energy, ERCOT raised the market price for energy during certain periods of the Storm to a "System-Wide Offer Cap" of $9,000 per MWh. *Id.* at 3.  On February 14, 2021, Canadian Breaks issued a notice of force majeure under the Agreement, stating that "the extreme weather conditions" arising from the Winter Storm prevented Canadian Breaks from "fully performing its obligations under the Master Agreement, including providing [JPMorgan] with Product in agreed Quantities at the Delivery Point."  ECF No. 108 at 1021–22.  The next day, on February 15, 2021, JPMorgan responded that it rejected the claim of a force majeure event and

expected Canadian Breaks to fully perform under the Agreement. *Id.* at 1024–25. Subsequently, Canadian Breaks failed to fully perform its obligations under the Agreement to sell an hourly fixed quantity of electricity to JPMorgan .

JPMorgan subsequently bought energy on the open market to cover its obligations to provide energy to a third-party downstream purchaser, and invoiced Canadian Breaks for the difference between the cost of the replacement energy and the price under the Agreement. On March 1, 2021, Canadian Breaks filed suit in the District Court of Deaf Smith County, Texas, seeking a declaratory judgment that the force majeure clause in the Agreement relieved Canadian Breaks of its contractual obligations to JPMorgan to the extent it was unable to deliver electricity as required under the Agreement. ECF No. 1-1 at 13–14. JPMorgan removed the case to this Court and asserted counterclaims.

Both parties have amended their pleadings. In addition to seeking a declaratory judgment that the Agreement's force majeure provisions excused its nonperformance, Canadian Breaks now seeks damages for breach of contract based on JPMorgan's allegedly improper exercise of contractual remedies, including by seeking default remedies during the pendency of this litigation. Am. Compl. (ECF No. 69) ¶¶ 31–41. Specifically, Canadian Breaks contends that JPMorgan improperly declared default based on Canadian Breaks's nonpayment of the invoices for replacement energy and initiated foreclosure proceedings, despite the Agreement providing that disputed invoices need not be paid while the dispute is pending. JPMorgan asserts counterclaims for breach of contract and a declaratory judgment that Canadian Breaks's nonperformance was not excused by force majeure.

JPMorgan moved for summary judgment on all asserted claims. ECF No. 106. In the FCR, Magistrate Judge Ray recommends that this Court grant JPMorgan's Motion for Summary Judgment in full, concluding:

> (1) the events surrounding Winter Storm Uri did not constitute a force majeure event under the Agreement; (2) CB breached the Agreement by failing to perform; (3) none of the other affirmative defenses that CB asserted excuse its nonperformance; (4) JPM did not breach the Agreement by exercising its contractual collection remedies; and JPM is entitled to damages for breach of contract in an amount to be determined at trial.

FCR at 23.

## II. Legal Standard

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). For any unobjected-to portions of a magistrate judge's proposed findings, conclusions, and recommendations, the Court applies a "clearly erroneous, abuse of discretion and contrary to law" standard of review. *Wilson*, 864 F.2d at 1221. Arguments that are raised for the first time after a recommendation is filed are generally waived unless they concern subject matter jurisdiction. *See, e.g.*, *Firefighters' Ret. Sys. v. EisnerAmper, L.L.P.*, 898 F.3d 553, 559 (5th Cir. 2018).

## III. Analysis

Canadian Breaks raises several objections to the recommendation in the FCR that JPMorgan's Motion for Summary Judgment be granted in full. First, Canadian Breaks contends that the Magistrate Judge incorrectly interpreted the Agreement in concluding that the force majeure clause did not apply so as to excuse Canadian Breaks's nonperformance under the Agreement. Specifically, Canadian Breaks contends that the Magistrate Judge improperly

4

construed the Agreement when it concluded that Canadian Breaks's nonperformance fell outside of the Agreement's force majeure clause.

The Agreement provides: "To the extent either party is prevented by Force Majeure from carrying out, in whole or part, its obligations . . . then, unless the terms . . . specify otherwise, [that party] shall be excused from the performance of its obligations . . . ." ECF No. 129 at 560. The Agreement defines "Force Majeure" as:

> an event or circumstance which prevents the Claiming Party from performing its obligations under one or more Power Transactions, which event or circumstance was not anticipated as of the date the Power Transaction was agreed to, which is not within the reasonable control of, or the result of the negligence of, the Claiming Party, and which, by the exercise of due diligence, the Claiming Party is unable to overcome or avoid or cause to be avoided. . . .

*Id*. at 566.[1]

The Agreement specifies that "Force Majeure shall not be based on . . . the loss or failure of Seller's supply."[2] *Id.* "Supply" is not defined in the Agreement. Applying New York law,[3] the Magistrate Judge in the FCR concluded that "supply" means "the energy that [Canadian Breaks] generated from its wind farm," and that lack of supply—and not financial hardship—caused Canadian Breaks not to perform. FCR at 10–15. Specifically, if "the wind had continued to blow at historical levels throughout Uri," Canadian Breaks "could have sold its energy on the open market, received in return whatever the market price was, and then used that to purchase the energy that the Agreement obligated it to schedule for delivery to [JPMorgan]." *Id.* at 15.

---

[1] The full definition of "Force Majeure" in the Agreement, along with amendments that are not relevant to the Court's analysis, is provided in the FCR. *See* FCR at 9–10.
[2] "Seller" means the party "that is obligated to sell and deliver, or cause to be delivered, the Product[,]" *i.e.*, Canadian Breaks. ECF No. 129 at 567. "Buyer" refers to JPMorgan in this context, as it means the party "that is obligated to purchase and receive, or cause to be received, the Product." *Id*. at 565.
[3] The Magistrate Judge concluded, and the parties do not dispute, that New York law applies under the Agreement. FCR at 7.

Thus, the Magistrate Judge concluded that because Canadian Breaks's nonperformance was based on the loss or failure of its supply, the force majeure clause did not apply.

Canadian Breaks objects to the FCR's recommendation as to the applicability of the force majeure clause on two grounds. First, Canadian Breaks contends that the Magistrate Judge erred in his construction of "Seller's supply." The Court disagrees. The plain language of the Agreement, reviewed in the context of the parties' dealings and relevant New York authorities, indicates that "supply" refers to the energy that is generated at the relevant windfarm, and not, as Canadian Breaks urges, items procured "from a supplier to operate, such as spare parts." ECF No. 132 at 8 (emphasis omitted); *see, e.g.*, *J.P. Morgan Ventures Energy Corp. v. Miami Wind I, LLC*, 179 N.Y.S.3d 892 at *4 (N.Y. Sup. Ct. 2022).

Second, Canadian Breaks contends that the FCR improperly assumed that Canadian Breaks could have wholly performed under the Agreement but for the failure of its wind farm to generate adequate energy, and in doing so disregarded other facts that allegedly contributed to Canadian Breaks's failure to perform, including market disruption—*i.e.*, the high energy prices and the large collateral call amounts required by ERCOT—and Canadian Breaks's lack of financial resources. However, the Court has reviewed the summary judgment record and concludes that these other factors all derive from the fact that Canadian Breaks's windfarm could not produce enough energy to meet the fixed quantities required under the Agreement. For example, Canadian Breaks's own interrogatory responses establish that it was concerned about posting collateral only to the extent that it was not able to produce sufficient energy to cover the amounts required by the Agreement. *E.g.*, ECF No. 131 at 81 ("CB lacked credit support or cash on its balance sheet to cover the entire collateral call, which limited CB's ability to buy energy *to cover any portion that it could not produce*." (emphasis added)); *id.* at 82 ("CB thought its only

choice was to post the collateral to ERCOT, which CB lacked the financial wherewithal to do *if CB could not produce enough energy to cover the hedge agreement's requirements . . . .*"). Indeed, Canadian Breaks's own witnesses agreed that it invoked force majeure to excuse nonperformance on an hour-by-hour basis, *i.e.*, only on hours when the generated energy was less than the fixed quantities required under the Agreement, further confirming that the root cause of Canadian Break's force majeure declaration was the lack of its supply of generated energy.  *See id.* at 869–70.

As such, following de novo review of the summary judgment record, the Court finds no basis to reject the Magistrate Judge's recommendation on the issues of Canadian Breaks's nonperformance, whether the force majeure clause excused that nonperformance, and the inapplicability of Canadian Breaks's affirmative defenses to JPMorgan's breach of contract claim.[4]  Thus, the Court grants JPMorgan's Motion for Summary Judgment as to those claims.

The same cannot be said of Canadian Breaks's breach of contract claim.  The Court concludes that there are genuine issues of material fact as to whether JPMorgan breached the Agreement by including improper charges when invoicing Canadian Breaks for the cost of replacement energy after Canadian Breaks's nonperformance, and whether JPMorgan improperly exercised its default remedies under the Agreement.

As to the first issue, the Agreement provides that if Canadian Breaks fails to deliver all or part of the energy required under the Agreement, and such failure is not excused, then Canadian Breaks shall pay the difference between the contracted-for price and the "Replacement Price."

---

[4] Canadian Breaks objects to the FCR's recommendation on its affirmative defenses of impossibility and failure to mitigate damages, but does not object to the FCR's recommendations as to frustration of purpose, mistake and/or mutual mistake, and unconscionability.  ECF No. 128 at 28–29.  The Court has reviewed de novo the summary judgment briefing, the record, Canadian Breaks's objections, and JPMorgan's response, and for the same reasons articulated in the FCR, concludes that there is no genuine issue of material fact on Canadian Breaks's affirmative defenses of impossibility and failure to mitigate.

ECF No. 129 at 708–09.  The Agreement defines "Replacement Price" as meaning the price at which Buyer, "acting in a commercially reasonable manner," purchases a replacement product, plus costs reasonably incurred in the purchase and additional transmission charges; "however, in no event shall such price **include any penalties, ratcheted demand or similar charges**." *Id.* at 725 (emphasis added).  The Agreement contains a procedure through which either party "may, in good faith, dispute the **correctness** of any invoice . . . or information forming the basis for an invoice"; moreover, "[p]ayment of disputed amounts shall not be required while a dispute is pending." *Id.* at 593–94 (emphasis added).  Neither "ratcheted demand" nor "correctness" are defined in the Agreement.

Canadian Breaks contends that, in invoicing Canadian Breaks for cost of replacement energy it purchased on the market, JPMorgan included "ratcheted demand or similar charges," in violation of the Agreement, namely, demand-based charges imposed by ERCOT during Winter Storm Uri.  For support, Canadian Breaks points to deposition testimony of JPMorgan's head of its ERCOT trading desk, who agreed with characterization of such charges as being related to demand being "ratcheted up":

> Q. So as demand is ratcheted up, this RD realtime reliability deployment price adder is a charge that's added to the price of the electricity, is that what you're saying?
> . . .
> THE WITNESS: It's – it's a component of the pricing in ERCOT.
>
> Q. And it's attached to -- so demand is ratcheted up, and then this charge, this adder is charged – is added to the price of the electricity, is that how it generally works?
> . . .
> THE WITNESS: At a high level, that is my understanding, yes.

*Id.* at 219.

JPMorgan responds that "ratcheted demand" is a term of art in the electricity industry, and has no application to scarcity-based pricing imposed by ERCOT during Uri.

8

The Court concludes that a genuine issue of material fact exists as to whether, when invoicing Canadian Breaks for the cost of replacement energy, JPMorgan breached the Agreement by improperly including unrecoverable charges in the calculation of "Replacement Price." Although the FCR did not address this issue, Canadian Breaks sufficiently asserted the inclusion of unrecoverable charges in the invoices as part of its claim for breach of contract, and as the party seeking summary judgment, JPMorgan carries the burden of showing a lack of genuine issue of material fact. *See* Amended Compl. (ECF No. 68) ¶ 29; *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). At this juncture, the Court concludes that JPMorgan has not established the lack of a fact question as to whether the invoices contained unrecoverable overcharges in the form of "ratcheted demand or similar charges," and thus summary judgment is inappropriate. *See, e.g.*, ECF No. 129 at 777 (opining that the increased charges totaled $45,487,746).

In addition, the Court concludes that there is a genuine issue of material fact as to whether JPMorgan improperly declared default and initiated default remedies—including foreclosure of the wind farm—after Canadian Breaks contested the invoices based on its declaration of force majeure and withheld payment. The Agreement provides that disputed invoices need not be paid while a dispute is pending, but the record indicates that JPMorgan declared default based on Canadian Breaks's nonpayment and engaged in default remedies, including foreclosure and early termination, even though the invoice dispute remained pending. JPMorgan argues that the provision permitting a party to dispute the "correctness" of an invoice is inapplicable here, but provides no evidence or grounds on which the Court can rely to justify summary judgment at this juncture.

## IV.     Conclusion

For the foregoing reasons, the Court **SUSTAINS** Canadian Breaks's objections to the FCR's recommendation that the Court grant summary judgment on Canadian Breaks's breach of contract claim, and **OVERRULES** the remaining objections.  JPMorgan's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Summary judgment for JPMorgan is **GRANTED** with respect to JPMorgan's claims for breach of contract and declaratory judgment and Canadian Breaks's claim for declaratory judgment, and **DENIED** with respect to Canadian Breaks's claim for breach of contract.  The case will proceed to trial on the issue of JPMorgan's damages for Canadian Breaks's breach of the Agreement, and Canadian Breaks's claim for breach of the Agreement.

By **April 12, 2024**, the parties shall file a joint report providing an estimated length of trial, at least four mutually agreeable proposed dates for a bench trial, and a statement on whether the parties are amenable to trying the case in Dallas, Texas.

**SO ORDERED**.

March 28, 2024.

_____
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

10