IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

CANADIAN BREAKS LLC,

      Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

      Defendant.

2:21-CV-037-Z

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

"[I]f a federal court determines that it lacks jurisdiction in a case, 'the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Hain Celestial Grp., Inc. v. Palmquist*, 607 U.S. ----, 146 S. Ct. 724, 734 (2026) (Thomas, J., concurring) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

Defendant JPMorgan Chase Bank won roughly $95 million after a bench trial before another district judge. That judge retired shortly thereafter, and this case was reassigned to this Court in July 2025. Four years earlier, JPMorgan removed this case to federal court based on diversity of citizenship. But JPMorgan never established federal jurisdiction. So this Court must remand the case.

Plaintiff Canadian Breaks' Motion to Alter or Amend the Judgment is **GRANTED**. ECF No. 210. The Final Judgment is **VACATED**. ECF No. 204. This case is **REMANDED** to the 222nd District Court of Deaf Smith County, Texas. The parties' pending cross-motions for attorney's fees are **DENIED** as moot. ECF Nos. 225, 228.

BACKGROUND

This dispute stems from a major snowstorm[1] that crippled much of the central and eastern United States in February 2021. The Texas Panhandle, where Plaintiff Canadian Breaks LLC owns and operates a wind farm, was no exception. Record-low temperatures lasted for several days, dropping as low as twenty degrees below zero.[2] While the precise nature of the parties' suit is not relevant here, their dispute centers on Canadian Breaks' alleged failure to comply with an energy hedge contract with JPMorgan during the 2021 winter storm.

After Canadian Breaks filed suit in Texas state court on March 1, 2021, JPMorgan removed to this Court on March 9, 2021. *See* ECF No. 1 at 1–2. JPMorgan relied only on diversity jurisdiction as its basis for removal. *See id.* at 2–3 (citing 28 U.S.C. § 1332). The diversity jurisdiction statute provides that federal courts have jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the parties are completely diverse—that is, are citizens of different states. 28 U.S.C. § 1332(a). Complete diversity requires that no plaintiff is a citizen of the same state as any defendant. The party asserting federal jurisdiction—here, JPMorgan—must prove that this is the case.

JPMorgan's Notice of Removal failed to meet this requirement. On March 22, 2021, the magistrate judge entered an Order to Properly Allege Citizenship. ECF No. 9. The magistrate judge noted that, in cases involving LLCs, it is the removing party's burden to "specifically allege the citizenship of every member of every LLC or partnership involved" in a lawsuit at the time of removal. *Id.* at 1 (quoting *Settlement Funding, L.L.C. v. Rapid*

---

[1] Unofficially named "Winter Storm Uri" by the Weather Channel, many people colloquially refer to the storm as "Snowpocalypse," "Snowmaggedon," or the "Great Texas Freeze."

[2] *See February 9th - 16th, 2021 – Two Rounds of Snow and Record Cold Temperatures*, NAT'L WEATHER SERV., https://www.weather.gov/ama/MidFeb2021SnowColdSnow [https://perma.cc/UR9K-5VRX] (last visited Mar. 31, 2026).

2

*Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)). The magistrate judge therefore ordered JPMorgan to "specifically plead the name and citizenship of every member of every LLC involved in this action, whether the LLC is a party, member of a party, or member of a party's member, and so on." *Id.* at 2. The Order noted that "general statements such as 'all members of the LLC are citizens of Texas'" would not suffice. *Id.* Until JPMorgan "properly alleges Plaintiff's citizenship," the Order continued, "this Court is not shown to have subject matter jurisdiction." *Id.*

After again failing to allege Canadian Breaks' citizenship, JPMorgan moved for leave to conduct jurisdictional discovery. ECF No. 16. JPMorgan wrote that despite "exhaustive diligence," it had "not been able to identify the limited partners of certain Ontario limited partnerships in Canadian Breaks' ownership chain because that information is not publicly available." *Id.* at 1. In the alternative to pursuing jurisdictional discovery, JPMorgan asked the magistrate judge to "treat the original notice of removal as facially sufficient" despite its clear failure to establish federal jurisdiction. *Id.* at 2 (citation modified). For its part, Canadian Breaks moved to remand the case to state court on April 8, 2021, citing the magistrate judge's prior statement that until JPMorgan "properly alleges Plaintiff's citizenship, this Court is not shown to have subject matter jurisdiction." ECF No. 20 at 2 (quoting ECF No. 9 at 2).

In a one-page Order issued on May 4, 2021, the magistrate judge denied JPMorgan's request for jurisdictional discovery. ECF No. 36. The Order did not address JPMorgan's arguments or contain legal analysis. However, the Order noted that the magistrate judge would "consider [JPMorgan's] arguments raised in support of its Motion to Conduct Jurisdictional Discovery when addressing Plaintiff's Motion to Remand and Brief in Support." *Id.* at 1 (internal citation omitted).

3

JPMorgan bore the burden of proving complete diversity, and it had failed to meet it. But rather than concede defeat, JPMorgan's response to Canadian Breaks' motion to remand asked the magistrate judge to break new legal ground by shifting the burden from the party asserting federal jurisdiction to the party resisting it. Instead of affirmatively alleging Canadian Breaks' citizenship, which JPMorgan admitted it could not do, JPMorgan requested permission "to plead on information and belief that Canadian Breaks's members are *not* citizens of Ohio." ECF No. 44 at 11 (emphasis added). JPMorgan further asked to "be allowed to proceed on that basis unless and until Canadian Breaks identifies a non-diverse citizen in its ownership structure." *Id.*

The magistrate judge agreed, issuing proposed Findings, Conclusions, and Recommendation ("FCR") to deny Canadian Breaks' motion to remand and allow this case to remain in federal court. ECF No. 44. The FCR praised JPMorgan's "extensive efforts to ascertain Canadian Breaks's citizenship—despite an ownership structure that becomes exponentially more complicated down every layer or tier—by investigating publicly available sources, consulting with Canadian legal counsel, and obtaining directly from Canadian Breaks the information it is able to provide to JPMorgan." *Id.* at 13. "Based on those efforts," the FCR continued, "JPMorgan has provided a detailed—but not complete—pleading of Canadian Breaks's citizenship through numerous layers or tiers of its ownership structure." *Id.* "Consequentially," the magistrate judge concluded, "JPMorgan should be granted leave to amend its notice of removal and allege complete diversity on information and belief." *Id.* at 14.[3] To reconcile the apparent inconsistency between denying a removing party jurisdictional discovery while simultaneously denying the opposing party's motion to remand,

_____

[3] Canadian Breaks timely objected to the magistrate judge's FCR. ECF No. 46. In a one-page Order, the previous district judge overruled that objection and adopted the FCR on October 20, 2021. ECF No. 51.

the magistrate judge pointed to JPMorgan's concession that "ordering jurisdictional discovery would be unproductive at this point." *Id.* at 10; *see also id.* ("Canadian Breaks represented that it has provided all the information related to its ownership structure that it is able to make available to JPMorgan.").

JPMorgan filed an Amended Notice of Removal on November 1, 2021. ECF No. 58. The Amended Notice of Removal relied only on JPMorgan's information and belief to allege Canadian Breaks' citizenship. *See, e.g., id.* at 8 ("Because the amount in controversy exceeds $75,000 and Defendant is a citizen of Ohio while, upon information and belief, Plaintiff is a citizen of Delaware, Massachusetts, New Jersey, and Canada, but *not* of Ohio, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332.").

No party raised the jurisdictional issue again, including at a bench trial on damages held in December 2024. An FCR recommending summary judgment in favor of JPMorgan, entered by a different magistrate judge on September 29, 2023, did not address jurisdiction. ECF No. 123. Nor did the Findings of Fact and Conclusions of Law and Final Judgment issued on June 10, 2025.[4] After the previous district court entered judgment, Canadian Breaks finally raised jurisdiction again in the instant Motion to Alter or Amend the Judgment, filed on July 8, 2025. The case was reassigned to this Court shortly thereafter, on July 25, 2025.

Beginning in August 2025, the parties filed several joint mediation reports, expressing their desire to mediate in order to "reach a global resolution of this litigation—including but not limited to the issue of attorneys' fees" and asking the Court to extend the deadline for attorney's fees motions. ECF No. 215 at 1; *see also* ECF Nos. 218, 220. The Court granted

---

[4] As JPMorgan notes in its motion for attorney's fees, it "obtained a near complete victory in this years-long litigation" and "prevail[ed] on $95.3 million of the total $98.9 million that ultimately became at issue in this case." ECF No. 226 at 5.

three such extensions. ECF Nos. 217, 219, 221. However, the parties' fourth status report indicated that they had canceled their upcoming mediation and did not state when or whether they would mediate again. *See* ECF No. 222 at 2.

On February 23, 2026, the Court ordered the parties to file a status report "stat[ing] that the parties are very near to a final settlement and provid[ing] a concrete date by which they intend to file a notice of settlement." ECF No. 223 at 1. "If the status report does not reflect meaningful progress toward settlement," the Court noted, "the parties may expect a ruling on Plaintiffs pending Motion to Alter or Amend the Court's Findings of Fact and Conclusions of Law and Final Judgment (ECF No. 210) as early as next week." *Id.* The parties responded that while settlement was a "high priority," they were "unable to provide the Court with a concrete date by which they expect to file a notice of settlement." ECF No. 224 at 1.

LEGAL STANDARD

Under Rule 52(b), a court "may amend its findings—or make additional findings—and may amend the judgment accordingly." FED. R. CIV. P. 52(b). "The purpose of a Rule 52(b) motion 'is to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence.'" *Shenzen Synergy Digit. Co. v. Mingtel, Inc.*, No. 4:19-CV-216, 2022 WL 2252585, at *1 (E.D. Tex. June 22, 2022), *aff'd*, 74 F.4th 343 (5th Cir. 2023) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)). "A Rule 52(b) motion should not 'be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits.'" *Id.* (quoting *Garcia v. Stephens*, No. 3:06-CV-2185, 2015 WL 6561274, at *2 (N.D. Tex. Oct. 29, 2015)). Rule 52 motions "may accompany a motion for a new trial under Rule 59." FED. R. CIV. P. 52(b).

Courts analyze Rule 59(e) motions to alter or amend a judgment under the same standard. *See Interstate Fire & Cas. Co. v. Cath. Diocese of El Paso*, 622 F. App'x 418, 420

6

(5th Cir. 2015). "Like motions to amend under Rule 52(b), motions to reconsider under Rule 59(e) serve a very limited purpose: 'to permit a party to correct manifest errors of law or fact, or to present newly discovered evidence.'" *Shenzen Synergy*, 2022 WL 2252585, at *2 (quoting *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 331 (W.D. Tex. 2002)); *see also Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) ("[Rule 59(e) motions are] not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990))). This is because district court opinions are not "mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Shenzen Synergy*, 2022 WL 2252585, at *2 (quoting *Hernandez v. Rush Enters., Inc.*, No. 4:19-CV-638, 2021 WL 1163725, at *1 (E.D. Tex. Mar. 26, 2021) (internal marks omitted)). "Rather, 'litigants are expected to present their strongest case when the matter is first considered.'" *Id.* (quoting *Louisiana v. Sprint Commc'ns Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)). Accordingly, "relief under Rule 59(e) is appropriate only when the movant shows: '(1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.'" *Id.* (quoting *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002)). Courts should exercise their "considerable discretion" to grant a Rule 59(e) motion "sparingly." *Templet*, 367 F.3d at 469; *see also Clancy v. Emps. Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000) ("[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly . . . ." (citing *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998))); *Pa. Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992) ("Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources.").

ANALYSIS

## I. Subject-Matter Jurisdiction

"The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Hain Celestial*, 146 S. Ct. at 734 (Thomas, J., concurring) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 101 (1998)). In contrast to the state courts, which typically possess general jurisdiction, "[f]ederal courts are courts of limited jurisdiction and generally can resolve only the cases that Congress grants them power to hear." *Id.* at 728 (majority opinion of Sotomayor, J.); *see also id.* at 730 ("Federal courts 'are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them.'" (*Kempe's Lessee v. Kennedy*, 9 U.S. (5 Cranch) 173, 185 (1809) (Marshall, C.J.)). "The issue of subject matter jurisdiction cannot be waived, and federal courts 'are duty-bound to examine the basis of subject matter jurisdiction' at all stages in the proceedings and dismiss if jurisdiction is lacking." *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1431 (2025) (quoting *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021)).

### A. Removal Jurisdiction in Diversity Cases

28 U.S.C. Section 1332 authorizes the diversity jurisdiction of the federal courts. In this statute, Congress provided that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). "It is well-established that the diversity statute requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Vargas v. Stone Container Corp.*, 144 F. App'x 365, 367 (5th Cir. 2005) (citing *Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir. 1992)); *see also Megalomedia Inc. v. Phila. Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) ("Diversity

8

jurisdiction is proper only if there is complete diversity of citizenship among the parties." (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806))).

"When a plaintiff files a civil action in state court over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendants may remove the action to federal court" pursuant to 28 U.S.C. Section 1441(a). *Vargas*, 144 F. App'x at 367. "If the plaintiff then contests the removal by filing a motion to remand, the district court must immediately address the issue of jurisdiction prior to addressing the merits of the case." *Id.* If a court finds that it lacks jurisdiction, it must remand the case to state court. *See Harrison v. Crowley Mar. Corp.*, 181 F. Supp. 3d 441, 442–43 (S.D. Tex. 2016). "[T]he removal statute should be strictly construed in favor of remand." *Settlement Funding*, 851 F.3d at 536 (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). The removing party at all times "bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno*, 276 F.3d at 723 (citing *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)).

### B. Citizenship of LLCs

"[I]n a diversity case, whenever there is an unconventional party (that is, someone or something other than either a natural person suing in his own rather than a representative capacity, or a business corporation) a jurisdictional warning flag should go up." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) (Posner, J.).

The Fifth Circuit, like every other circuit to consider the question, has held that the citizenship of limited liability companies is determined by the citizenship of all of the LLC's members. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("All federal appellate courts that have addressed the issue have reached the same conclusion: like limited partnerships and other unincorporated associations or entities, the citizenship of a

9

LLC is determined by the citizenship of all of its members."); *see also id.* (collecting decisions from the First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits). The Third, Tenth, and D.C. Circuits have since reached the same conclusion. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (holding that "the citizenship of an LLC is determined by the citizenship of its members"); *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015) (joining "all other circuits that have considered the matter in concluding [an LLC] takes the citizenship of all its members"); *CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 21 (D.C. Cir. 2016) (concluding that "[u]nincorporated associations, including LLCs, have the citizenship of each of their members").

More recently, the Supreme Court reached the same conclusion: The citizenship of an unincorporated entity "depends on the citizenship of 'all [its] members.'" *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 384 (2016) (Sotomayor, J.) (quoting *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). "[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) (per curiam including Posner, J.) (citing *Carden*, 494 U.S. 185). "Failure to go through all the layers can result in dismissal for want of jurisdiction." *Id.*

This results in a jurisdictional anomaly: Unlike corporations, which are citizens of at most two states (their state of incorporation and their principal place of business), LLCs can be citizens of dozens of states at once. Because these entities can have dozens of members, it can be difficult to establish federal jurisdiction when an LLC is a party. Even so, the Supreme Court has "firmly resisted" treating unincorporated associations such as LLCs "as corporations for diversity purposes." *Grey Wolf Drilling*, 542 F.3d at 1080 (quoting *Carden,*

10

494 U.S. at 195–96 (internal quotation marks omitted)); *see also Americold Realty*, 577 U.S. at 384 ("We also decline an amicus' invitation to apply the same rule to an unincorporated entity that applies to a corporation—namely, to consider it a citizen only of its State of establishment and its principal place of business. When we last examined the 'doctrinal wall' between corporate and unincorporated entities in 1990, we saw no reason to tear it down." (internal citation omitted) (quoting *Carden*, 494 U.S. at 190)). While the diversity jurisdiction statute treats other legal entities differently, "it is up to Congress if it wishes to incorporate [unincorporated] entities into 28 U.S.C. § 1332(c)'s special jurisdictional rule." *Americold Realty*, 577 U.S. at 384.

The party asserting federal jurisdiction "bear[s] the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction." *Reule*, 114 F.4th at 365. When an LLC is a party, "the party invoking the federal court's jurisdiction must allege the citizenship of each LLC's members" to survive a motion to remand. *Megalomedia*, 115 F.4th at 659 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). This burden grows heavier as a case progresses toward final judgment. "At the summary judgment stage, [the removing] party must provide evidence sufficient to support a jury finding of the citizenship of each LLC's members. And at trial, that party must prove the citizenship of each LLC's members." *Id.*

JPMorgan did none of that. It merely alleged "upon information and belief" that Canadian Breaks was *not* a citizen of Ohio. ECF No. 58 at 8.

11

## II. Motion to Alter or Amend

### A. Alleging Citizenship on Information and Belief

In allowing JPMorgan to plead jurisdictional facts on information and belief, the magistrate judge's FCR invoked a then-recent district court decision from the Eastern District of Texas. In that case, *Hise Real Estate Investments, LP v. Great Lakes Insurance SE*, the district judge confronted similar—but not identical—facts to those in this case. No. 4:20-CV-820, 2021 WL 217264, at *1 (E.D. Tex. Jan. 21, 2021). In *Hise*, the defendant removed from state court based on diversity of citizenship. The court ordered the defendant to amend its notice of removal, concluding that it "had failed to adequately allege complete diversity of citizenship between the parties." *Id.* The defendant did so, but its Amended Notice of Removal was still deficient. The plaintiff accordingly moved to remand to state court, contending that the defendant had "fail[ed] to adequately allege the citizenship of Hise's limited partner because Great Lakes makes such allegation 'upon information and belief.'" *Id.* In denying the motion to remand, Judge Jordan noted:

> The Fifth Circuit has not expressly held that a party may plead the citizenship of an opposing party 'upon information and belief.' However, in an unpublished opinion, the Fifth Circuit approved removal where [the] defendants "asserted 'on information and belief' that all 308 plaintiffs were citizens of Texas" and where the plaintiffs "failed to demonstrate that this was incorrect." *Volentine v. Bechtel, Inc.*, 209 F.3d 719, 2000 WL 284022, at *2 (5th Cir. 2000) (unpublished table decision) ("Because unrebutted allegations of citizenship in a removal petition based on information and belief is sufficient to satisfy the removal statute, the defendants have satisfied the first requirement for diversity jurisdiction." (citation omitted)).

*Id.* At the time of Canadian Breaks' motion to remand, the relevant facts were the same: A removing party asked to be allowed to remain in federal court by pleading jurisdictional facts on information and belief.

But that is where the similarities end. *Hise* involved an early-stage motion to remand. The question before the court was the degree of evidence required to survive an opposing

party's initial opposition to removal—*not* what is enough at final judgment. *Hise* itself acknowledged this distinction, citing out-of-circuit decisions that "expressly held that parties may properly plead diversity of citizenship upon information and belief" while limiting this holding to the "initial[]" stages of litigation. 2021 WL 217264, at *2 (citing *Carolina Cas. Ins. Co. v. Tamp Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014)). *Hise* does not stand for the idea that a party may allege citizenship on information and belief *through* final judgment.

Importantly, the magistrate judge's FCR did not cite *Hise* for that proposition. The FCR only addressed information-and-belief pleading in the early stages of a case, so it fell squarely within the nascency of litigation exception recognized by the Fifth Circuit.

Rather, the FCR's fatal analytical error was stating that "JPMorgan should be allowed to proceed in federal court unless and until Canadian Breaks can identify any of its members who are citizens of Ohio, thus destroying diversity jurisdiction." ECF No. 44 at 14–15. This novel burden-shifting analysis is foreign to the law of subject-matter jurisdiction. Even if a party may sometimes allege citizenship on information and belief in the early stages of a case, that is never enough at final judgment. And it is certainly never incumbent on the party opposing jurisdiction to *disprove* that jurisdiction exists.

Subsequent decisions by the Fifth Circuit reaffirm this view. In *Megalomedia*, Judge Oldham recognized that federal jurisdiction gets progressively more difficult to prove as a case approaches final judgment:

> At the pleading stage, the party invoking the federal court's jurisdiction must allege the citizenship of each LLC's members. At the summary judgment stage, that party must provide evidence sufficient to support a jury finding of the citizenship of each LLC's members. And at trial, that party must prove the citizenship of each LLC's members.

115 F.4th at 659 (citations omitted). *Megalomedia* described the precise situation presented by this case—a party's failure to "establish the citizenship of limited liability companies in a

13

diversity case under 28 U.S.C. § 1332"—as "an evergreen problem in our circuit." *Id.* The panel therefore remanded for jurisdictional discovery. *See id.*

The Fifth Circuit confronted the same issue again a year later in *PNC Bank v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568 (5th Cir. 2025). There, Judge Douglas described an amended complaint's "allegations of citizenship 'on information and belief'" as its "principal defect." *Id.* at 575. Like *Hise* and the cases it cited, the *PNC Bank* court reiterated that "allegations based on information and belief may establish jurisdiction" in the "nascency of litigation." *Id.* at 576. But the court expressly limited this principle to "allegations made at the early stages of litigation," canvassing several of the same out-of-circuit decisions cited in *Hise* before concluding that "[t]here is nothing in [the Fifth Circuit's case law], or the decisions of other circuits, to suggest that jurisdictional allegations on information and belief are unconditionally sufficient." *Id.* *PNC Bank* engages with *Volentine v. Bechtel*, a key case cited by the *Hise* court, only in a disapproving footnote, calling *Volentine* "an unpublished decision" that determined that "citizenship allegations based on information and belief were sufficient to establish diversity jurisdiction for removal where the plaintiffs failed to demonstrate that the allegation was incorrect." *Id.* n.5 (citing 209 F.3d at 719, *2 (unpublished table decision)). Thus, while "it may be sufficient to allege jurisdiction on information and belief in the nascency of litigation or where the party asserting jurisdiction is unable to ascertain jurisdictional facts with reasonable certainty, that is not the case here," where "the parties had been engaged in litigation for over five years." *Id.* at 576.

JPMorgan cites the second part of this disjunction—that it "may be sufficient to allege jurisdiction on information and belief . . . where the party asserting jurisdiction is unable to ascertain jurisdictional facts with reasonable certainty"—in its response to Canadian Breaks' Motion to Alter or Amend the Judgment. ECF No. 214 at 22 (quoting *PNC Bank*, 136 F.4th

at 575–76). But this comment by the *PNC Bank* court is dicta, and the Court declines to adopt its reasoning. The *PNC Bank* panel itself provided no authority supporting the idea that trying but failing to uncover jurisdictional facts can confer subject-matter jurisdiction upon the federal courts. That a federal court has no authority without jurisdiction—and that the party asserting jurisdiction bears the burden of proving that it exists—is one of the law's few "virtually inviolable rule[s]." *Settlement Funding*, 851 F.3d at 537 n.14. There is no "tried hard but failed" exception to this rule.[5] The Court declines JPMorgan's invitation to create a new, functionalist exception today.

### B. Remand After Final Judgment

"If a district court lacks subject matter jurisdiction both at the time of removal and at the time it enters a judgment, the judgment cannot stand." *Vargas*, 144 F. App'x at 367 (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76–77 (1996)); *see also Hain Celestial*, 146 S. Ct. at 731 ("Because the jurisdictional defect lingered through judgment, the judgment 'must be vacated.'" (quoting *Caterpillar*, 519 U.S. at 77)).

The judgment here is unquestionably void: It was entered by a court that lacked jurisdiction. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996) ("A judgment 'is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties . . . .'" (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir.

---

[5] The late Judge Jolly implicitly rejected such an exception in *Settlement Funding*. There, the removing party admitted that "despite diligent research," it was "not able to determine the citizenship of all of the members" of its ownership structure at the time of removal. 851 F.3d at 537. Instead of looking the other way, as JPMorgan asks this Court to do, the panel held that the removing party had "failed to meet its burden to establish complete diversity." *Id.* Thus, the lesson here is that the Fifth Circuit treats diligence-and-failure as confirmation that the removing party could not meet its burden, not as an exception to an otherwise exceptionless rule. It is irrelevant whether the removing party failed to allege its own citizenship or that of the party opposing removal. *See* ECF No. 214 at 21 (attempting to distinguish *Settlement Funding* on the ground that the removing party there "failed to properly allege its *own* citizenship"). In either case, the outcome is the same: If you cannot establish federal jurisdiction, you do not belong in federal court.

1984))); 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2862 (3d ed. 2025) (a judgment is void if "the court that rendered it lacked jurisdiction of the subject matter"). The only remaining question is whether this Court may remand the case now, or if, despite lacking jurisdiction, this Court must allow the final judgment to stand while the parties wait for the Fifth Circuit to remand on appeal.

28 U.S.C. Section 1447 governs remand after removal. It provides that a case "shall be remanded" if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). The next provision states that an order "remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d); *see also Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 761–62 (5th Cir. 1994) ("[A] remand order is reviewable if it is based upon the *Carnegie–Mellon* rationale, but is immune from review if it is based upon the grounds enumerated in Section 1447(c). . . . The critical distinction for determining appealability is the presence of federal subject matter jurisdiction prior to the order of remand. In a Section 1447(c) remand, federal jurisdiction never existed, and in a non-Section 1447(c) remand, federal jurisdiction did exist at some point in the litigation, but the federal claims were either settled or dismissed." (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357–58 (1988))); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557 (10th Cir. 2000) (noting that "*Cohill* involved an older version of the statute" and "the 1988 amendment to § 1447(c)" superseded the version at issue in *Cohill*).

Here, the previous district judge entered judgment on June 10, 2025. ECF No. 204. So this Court must first consider whether that judgment was "final" under Section 1447.

The judgment here was likely final, although there are conflicting authorities on this point. On one side stands *In re Carter*, the seminal case for post-judgment remands in the Fifth Circuit. 618 F.2d 1093 (5th Cir. 1980). There, the district court entered final judgment against the defendant. The defendant, who had initially removed the case, then "moved to

16

have the judgment vacated and the case remanded for lack of subject matter jurisdiction." *Id.* at 1097. The district court "regretfully concluded that it had not had jurisdiction to hear the case, vacated the judgment, and remanded the case to the Superior Court of Richmond County, Georgia." *Id.*

The plaintiff sought mandamus in the Fifth Circuit. The court of appeals addressed two questions: (1) whether Section 1447(d)'s "bar to appellate review of a district court order remanding a case to a state court" applies "to a remand order entered upon a ground specified in 28 U.S.C. [Section] 1447(c) but issued after entry of final judgment"; and (2) whether "the remand order entered by the district court" was correct on the merits. *Id.* at 1096. The court answered in the negative as to the threshold question, finding that Section 1447(d) does not preclude appellate review when a district court remands a case after final judgment because that scenario is not contemplated by Section 1447(c), which by its own terms applies only "before final judgment." On the merits, the Fifth Circuit held that the district court wrongly assessed its federal-question jurisdiction. It accordingly granted mandamus and remanded to the district court with instructions to vacate the remand order. *See id.* at 1105.

*In re Carter* reasoned that "[v]acation of the final judgment of a federal court that was without jurisdiction to hear the case, and a subsequent remand order, are not provided for" in Section 1447(c). 618 F.2d at 1098. "Nevertheless," the court continued:

> [B]ecause federal courts are courts of limited jurisdiction, due regard for the constitutional allocation of powers between the state and federal systems requires a federal court scrupulously to confine itself to the jurisdiction conferred on it by Congress and permitted by the Constitution. Although [Section] 1447(c) will govern remand in most cases, in those cases to which that section does not expressly apply the omission of coverage does not suffice to vest a federal court with a power it would not otherwise have. Even after entry of final judgment, the constitutional balance of policies that underlies the Article III grant of judicial power impels the vacation of that judgment and remand to the state court having jurisdiction when it is determined that the federal court was without power to act because of a lack of subject matter jurisdiction over a removed case. The action taken by the district court in this case, after it became aware that it had rendered a judgment when it was

17

powerless to have done so, was precisely what the Supreme Court ordered done in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), when the Court determined that a federal court in this circuit had rendered judgment without federal subject matter jurisdiction of the removed case.

*Id.* Thus, the ground for reversal in *In re Carter* was not the district court's decision to remand after final judgment—it was that the district court wrongly determined that it lacked jurisdiction. *Cf. Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 124 (5th Cir. 1992) ("We find that § 1447(d) presents no bar to our review of the district court's final judgment, including its remand of the state-law claims. We also find, however, no error in the district court's remand of plaintiffs' state-law claims to state court."). And *In re Carter* expressly approves of post-judgment remands when the district court *rightly* determines that it lacks subject-matter jurisdiction and therefore had no authority to enter judgment.

The *In re Carter* court continued:

Although the remand order in this case was not one explicitly covered by [Section] 1447(c), it nevertheless arguably ought to be immune from appellate review because it was entered upon a ground specified in that section. . . . Because Congress has so firmly stated a general policy against appellate review of remand orders, we deem it advisable to consider the end sought to be achieved by that policy and the effect on that end of a holding that remand orders entered after final judgment are reviewable.

618 F.2d at 1098. The court then noted that "[t]he policy underlying Section 1447(d) identified by the court in *Thermtron* is the preclusion of delay in litigating the merits of a controversy that would attend appellate litigation of jurisdictional issues." *Id.* at 1098–99 (citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 351 (1976), *abrogated by*, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)). *In re Carter* ultimately concluded that Section 1447(d) does not bar appellate review of remand orders issued after final judgment, however, because the "considerations of prompt and efficient judicial resolution of substantive controversies that inform a rule of nonreviewability of remand orders issued

before final judgment in a removed case do not apply with the same force to remand orders issued subsequent to entry of final judgment in a removed case." *Id.* at 1099.

In *Hays County Guardian v. Supple*, Judge Higginbotham reached the same conclusion: "By its terms, the district court's remand in this case did not occur 'before final judgment.' Rather, the remand was part of the final judgment on the merits. Therefore, the remand was not authorized by § 1447(c) and is not covered by § 1447(d)." 969 F.2d at 124 (citing *In re Carter*, 618 F.2d at 1089–99).[6]

On the other side stands the Fifth Circuit's unpublished per curiam opinion in *Vargas v. Stone Container Corporation*, which appears to depart from *In re Carter* and *Hays County*. 144 Fed. App'x 365. In *Vargas*, the Fifth Circuit concluded that a pending Rule 59 motion meant that "the district court had not finally disposed of the claim against one party." *Id.* at 368. The district court's judgment was therefore not final "until the Rule 59 motion was decided," which meant the "remand order was entered prior to a valid final judgment, and thus, cannot be reviewed" on appeal. *Id.*

This fails to persuade for several reasons. First, unlike *In re Carter* and *Hays County*, *Vargas* is unpublished and therefore nonprecedential. *Vargas* also does not cite to *In re Carter* in reaching its conclusion. And most importantly, *In re Carter* itself rejects the idea that the existence of a pending post-trial motion means a judgment is not final. In a footnote, the court rebuffed the argument that "timely motions for judgment [notwithstanding the verdict] and new trial stayed the finality of the judgment. . . . [C]onsiderations 'staying' the time for filing

---

[6] This general rule has at least one exception: When a district court conditions the finality of its own judgment on "matters which have not yet been resolved, it is not final." *Live & Let Live, Inc. v. Carlsberg Mobile Home Props., Ltd.-'73*, 592 F.2d 846, 848 (5th Cir. 1979) (citing *Segundo v. United States*, 221 F.2d 296 (9th Cir. 1955)). Thus, if the prior district court had noted the existence of an unresolved jurisdictional question, the judgment would not have been final. But it didn't, so it is.

19

an appeal because of pending motions are not relevant to when a judgment is 'final' under [Section] 1447(c)." 618 F.2d at 1099 n.6.

This case thus presents a situation not yet addressed by the Fifth Circuit: Federal jurisdiction never existed, but a remand to state court is nevertheless not covered by Section 1447(c) because final judgment has already been entered. In other words, had the previous district court recognized that it lacked jurisdiction in the four-plus years leading up to final judgment,[7] remand to state court would have been mandated by Section 1447(c) and unreviewable on appeal under Section 1447(d). But because the prior district court did not address jurisdiction at trial, in the Findings of Fact and Conclusions of Law, or in the Final Judgment, a remand in these circumstances likely *is* reviewable on appeal. This is so even though the facts here are more like the statutory remand scenario envisioned in *Bogle*: "federal jurisdiction never existed" in this case. 24 F.3d at 762.

Here, because the prior district court's judgment was likely final, Section 1447(c)'s "before final judgment" provision doesn't apply. But Section 1447 does not bar district courts from remanding a case merely because the court already entered judgment. It simply means that any order remanding a case after final judgment may be reviewed on appeal. *See In re Carter*, 618 F.2d at 1096–99.

Several considerations favor remanding this case now rather than waiting for the Fifth Circuit to do so on appeal. Most importantly, the judgment of the prior district court is

---

[7] While Canadian Breaks raised the jurisdictional issue through its motion to remand, the previous district court never finally determined that it had subject-matter jurisdiction. The magistrate judge merely provisionally determined that JPMorgan could proceed in federal court at that very early stage in this litigation. As already noted, jurisdiction did not come up at trial or in the previous court's Findings of Fact and Conclusions of Law. This means an estoppel-like principle that appears in Wright & Miller—that "a court's determination that it has jurisdiction of the subject matter is binding on that issue, if the jurisdictional question actually was litigated and decided"—does not apply here, since the jurisdictional question here was litigated but never finally decided. 11 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2862 (3d ed. 2025).

20

void—not voidable or merely erroneous, but *void*. That court had no authority over the subject matter of this case, so it had no authority to enter judgment. It merely purported to do so. It is as if that judgment—and this entire case—never existed.

For an analogy, look to annulments in the Catholic Church. *See* Benedict XIV, *Nimiam licentiam* (May 18, 1743), https://www.papalencyclicals.net/ben14/b14nimia.htm [https://perma.cc/3JKZ-PVNU]. "What is often referred to as a 'marriage annulment' in the Church is actually a declaration by a Church tribunal . . . that a marriage thought to be valid according to Church law actually fell short of at least one of the essential elements required for a binding union."[8] Annulments have no force of their own; they are a recognition that the object of the annulment (a marriage) did not meet the conditions for validity. The annulment merely formally declares what was already the case: The union was invalid and so was never a marriage at all. The same is true of void judgments.

Remanding this case now rather than on appeal will also conserve the resources of the parties and the courts. Instead of waiting for the Fifth Circuit to remand for lack of jurisdiction, remanding now will aid the swift resolution of this dispute. Besides, the posture this case is in now, where a court that did not conduct the underlying trial belatedly discovered that jurisdiction is lacking, is the same posture this case would be in on appeal. *See In re Carter*, 618 F.2d at 1100 ("A remand order entered by a district court following entry of final judgment in a case is more closely akin to a remand of a removed case ordered by an appellate court than it is to a remand by the trial court before a final judgment has been rendered."); *Mitchell L. Firm, L.P. v. Bessie Jeanne Worthy Revocable Tr.*, 8 F.4th 417, 423 (5th Cir. 2021) (Oldham, J.) ("Where, as here, the district court lacked subject-matter

---

[8] *Annulment*, U.S. CONF. OF CATH. BISHOPS, https://www.usccb.org/topics/marriage-and-family-life-ministries/annulment [https://perma.cc/6NH4-VPFC] (last visited Mar. 30, 2026). "'Annulment' is an unfortunate word that is sometimes used to refer to a Catholic 'declaration of nullity.' Actually, nothing is made null through the process." *Id.*

jurisdiction, 'the only function remaining to the court is that of announcing the fact and dismissing the cause.' That is equally true when a party notices the jurisdictional defect before judgment, when a party notices it after judgment in Rule 60(b)(4) proceedings, and when no party notices it." (internal citation omitted) (quoting *McCardle*, 74 U.S. (7 Wall.) at 514).

This Court thus faces a dilemma: allow a void judgment to stand by denying Canadian Breaks' Motion to Alter or Amend, or recognize the judgment as void now. The Court takes the latter path.

And importantly, this dilemma is of JPMorgan's own making. Its brief in support of its motion for jurisdictional discovery "request[ed]—in the alternative to being granted leave to conduct jurisdictional discovery—that its original Notice of Removal be deemed facially sufficient for purposes of diversity jurisdiction." ECF No. 17 at 17. In the same breath, JPMorgan told the magistrate judge that "ordering jurisdictional discovery would be unproductive" because it did not believe discovery would uncover information that would allow it to remain in federal court. ECF No. 44 at 10. The magistrate judge granted JPMorgan's fallback request,[9] allowing it to allege citizenship based on information and belief until Canadian Breaks *disproved* the existence of diversity jurisdiction. As already noted, that kind of burden-shifting is alien to the law of federal jurisdiction. But JPMorgan got what it wanted—and now this case illustrates the old adage that we should be careful what we wish for.[10]

---

[9] Because JPMorgan moved for jurisdictional discovery while simultaneously stating that discovery would prove unproductive, this was effectively their main request rather than an alternative one. In the face of JPMorgan's disclaimer that jurisdictional discovery would prove futile, the magistrate judge had two choices: allow JPMorgan to allege citizenship on information and belief, or remand the case.

[10] It bears reiterating that this litigation has been ongoing for more than five years, and nine months have elapsed since the prior district court entered judgment. The parties also requested multiple deadline extensions to accommodate ongoing settlement negotiations. They could have settled at any

For the same reasons, the Court discerns that allowing JPMorgan to conduct jurisdictional discovery at this late hour would again prove futile. In any event, this case proceeded to final judgment with a "lingering jurisdictional defect." *Hain Celestial*, 146 S. Ct. at 731 (citation modified). So no matter what jurisdictional discovery might uncover, "the judgment 'must be vacated.'" *Id.* (quoting *Caterpillar*, 519 U.S. at 77).

The Court recognizes that this outcome is less than ideal. But courts must "adhere to these rules 'regardless of the costs it imposes.'" *Settlement Funding*, 851 F.3d at 537 (quoting *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004)). And "an uncured jurisdictional defect means that 'the judgment must be vacated,' regardless of how efficient it might be to leave the judgment in place. That the parties may need to litigate a new trial in state court does not change the jurisdictional analysis." *Hain Celestial*, 146 S. Ct. at 732 (internal citation omitted) (quoting *Caterpillar*, 519 U.S. at 76–77).

Because this case languished for half a decade, the parties may believe remand and relitigation in state court to be wasteful. But the "so-called 'waste' of judicial resources that occurs when we dismiss a case for lack of jurisdiction is the price that we pay for federalism." *Id.* at 538 (quoting *Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 339 (5th Cir. 2014)). Subject-matter jurisdiction is one of the core rules that "keep[s] the federal courts within the bounds the Constitution and Congress have prescribed." *PNC Bank*, 136 F.4th at 572 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). That "[f]ederal courts are courts of limited jurisdiction" is arguably the most important of these rules. *Hain*

---

time. *See generally Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171, 607 U.S. ----, --- S. Ct. ----, 2026 WL 815823, at *5 (Mar. 25, 2026) (unanimously reversing copyright-infringement judgment that originally awarded Sony $1 billion in damages).

*Celestial*, 146 S. Ct. at 728. It can thus hardly be called a "waste" to continue policing the boundaries of federal power.[11]

### CONCLUSION

"[P]ower is inherent in every court . . . to undo what it had no authority to do originally." *Mitchell*, 8 F.4th at 423 (quoting *Nw. Fuel Co. v. Brock*, 139 U.S. 216, 219 (1891)). The previous district court had no authority to enter final judgment. This Court, therefore, must recognize that judgment as void.

Canadian Breaks' Motion to Alter or Amend the Judgment is **GRANTED**. ECF No. 210. The Final Judgment is **VACATED**. ECF No. 204. This case is **REMANDED** to the 222nd District Court of Deaf Smith County, Texas. The parties' pending cross-motions for attorney's fees are **DENIED** as moot. ECF Nos. 225, 228.

**SO ORDERED**.

March **31**, 2026

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

---

[11] While the Court reaches this result by granting Canadian Breaks' Motion to Alter or Amend the Judgment, it would reach the same conclusion *sua sponte*. Federal courts have "an independent obligation to assess our own jurisdiction." *PNC Bank*, 136 F.4th at 572; *see also id.* ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level." (quoting *Ruhrgas*, 526 U.S. at 583)). And "questions of subject matter jurisdiction may be raised at any time, even on appeal." *In re Carter*, 618 F.2d at 1099 n.6; *see also Shimon v. Sewerage & Water Bd. of New Orleans*, No. CIV.A. 05-1392, 2007 WL 4414709, at *6 (E.D. La. Dec. 14, 2007) ("[T]he Fifth Circuit ruled in *In re McCloy* that a lack of subject matter jurisdiction may be raised at any time . . . ." (citing 296 F.3d 370, 373 (5th Cir. 2002))).